The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The undersigned have also reviewed plaintiff-appellees motion for attorneys fees pursuant to G.S. 97-88 and G.S. 97-88.1. The appealing party has shown good ground to reconsider the evidence. However, after careful reconsideration by the Full Commission, the appealing party has not shown good ground to receive further evidence; rehear the parties or their representatives; or amend the holding of the Opinion and Award. The Full Commission adopts the holding of the Deputy Commissioner with modification of the Opinion and Award concerning the development of plaintiffs occupational disease.
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement dated April 1, 1998, as
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship between plaintiff and defendant-employer existed from May of 1971 to August 5, 1992.
3. Constitution State Service Company, a servicing company owned by and acting on behalf of Travelers Insurance Company, is a third party administrator employed by Sara Lee Knit Products, a duly-qualified self-insured employer, to provide adjusting services in connection with this claim.
4. The following documents are stipulated into evidence without further requirement of identification or authentication:
a. Plaintiffs I.C. Form 18 dated April 19, 1994, and Form 33 dated June 20, 1997; defendants I.C. Form 19 dated October 11, 1994, Form 22 dated May 11, 1994, and its undated Form 33R filed July 31, 1997, all of which are in the Commissions file and are incorporated herein by reference;
b. Stipulated Exhibit #1 (170 Pages)
(1) Records provided by defendant-employer from plaintiffs company medical file, including physical examination records attached to his employment applications, responses to respiratory questionnaires and pulmonary function tests administered to plaintiff by defendant-employers medical staff, and summaries thereof, covering the period May 22, 1971, through June 3, 1991;
(2) Letter report of C. D. Young, M.D., dated December 19, 1994 and supplemental letter from Dr. Young to counsel for plaintiff dated January 30, 1995;
(3) Letter report of T. R. Kunstling, M.D., dated April 1, 1996;
(4) Records from Charter Hospital.
c. Stipulated Exhibit #2 Form 22 Wage Chart (2 Pages)
d. Stipulated Exhibit # 3 — A series of dust measurement reports for OSHA compliance purportedly from Hanes/Sara Lee Knitwear, Stratford Road plant, from third party contractors, including dust measurements by vertical elutriator and TWA computation results for single, minutes per date, measurements, by job classification on first shift, on 20 separate test dates from February 1983 through March 1991, consisting of 118 pages.
e. Transcript of plaintiffs deposition and attached exhibits, taken October 8, 1997, in Winston-Salem, North Carolina.
5. The deposition of Ted Kunstling, M.D. is part of the evidentiary record.
***********
The Full Commission adopts and modifies the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff, who was born August 20, 1934, attended school but did not complete the fifth grade and did not learn to read and write well. He quit school at about age 14 and worked as a farm laborer as a child and into his teen years.
2. At approximately age 17, plaintiff began smoking and has smoked continuously since that time. Plaintiff has been advised on numerous occasions by medical personnel including employees of Hanes/Sara Lee that he should stop smoking.
3. At approximately age 18, plaintiff began work in the cotton textile industry in the early 1950s at Arista Cotton Mill (Arista) in Winston-Salem, where he was employed for approximately eighteen to nineteen years at various jobs including doffer in the spinning and winding departments, and in the dye house. The plant ran mostly cotton that produced cotton dust in the work environment. Plaintiff was exposed to cotton dust every day that he was on the job. The spinning room was the dustiest place that plaintiff worked. In fact, when he worked in the spinning room, one of his tasks was to blow off and clean the machines which created a large amount of dust. Using the forced air hoses to blow down and clean the light fixtures and ceilings, the walls and machinery was a regular occurrence. No dust masks or other respiratory protection were furnished or used by plaintiff and his fellow employees at Arista.
4. Following his employment at Arista, plaintiff worked for approximately one year at a similar mill, Wenonah Cotton Mill, near Lexington, North Carolina. He also worked as a tire re-capper for a short period of time. He then became employed by Hanes, now defendant-employer Hanes/Sara Lee, in 1971. However, he left to work for Cannon Mills where he was exposed on a daily basis to cotton dust. In 1974 plaintiff returned to work for defendant-employer until he retired in 1992.
5. In 1974 when plaintiff returned to work for Hanes/Sara Lee, he worked in the spinning room. Hanes/Sara Lee processed mostly cotton, with some blends of twenty-five percent (25%) Kodel polyester. The air quality was monitored at Hanes/Sara Lee. Plaintiff himself testified that the conditions were better at Hanes/Sara Lee than they had been at Arista. In fact, while plaintiff was at Hanes/Sara Lee he was administered pulmonary function tests usually every six (6) months and sometimes as often as every three (3) months. Plaintiffs job in ream spinning was eliminated and plaintiff was then transferred into the opening room where he helped break open 500 pound bales of raw cotton which he then fed into the machines which began its processing into yarn and cloth. In the opening room, plaintiff was required to wear a cloth mask to protect him from exposure to cotton dust. He was also furnished a protective face shield and gloves. However, these devices only provided partial protection from respirable size particles of cotton dust.
6. Thereafter, plaintiff was transferred into the card room where all new machinery had been installed. The machines in the card room were installed and operated with a forced air flow system that continually circulated and cooled the air in the card room keeping a fresh supply of air and pulling the dust off of the machines eliminating dust from the environment. The air was also washed and cooled. Plaintiff was never exposed to a greater amount of cotton dust than was allowable under OSHA standards while working with defendant-employer. Nevertheless, plaintiff was exposed to varying levels of cotton dust. For the last couple of years he was employed, plaintiff worked in the shipping department.
7. At the times Hanes/Sara Lee or their contractors conducted ambient dust measurements in the mill, plaintiff and fellow employees blew down and cleaned the entire mill before the dust collection devices were set. Air hoses were then put away as there would be no need to use the hoses during a test. Any time that plaintiff used an air hose to clean machinery, he used some type of breathing protection device. Nevertheless, plaintiff was exposed to cotton dust as the devices provided only partial protection.
8. Ardith Harris was plaintiffs supervisor in ream spinning and carding. Ms. Harris testified that the work environment was "cleaner in the 1970s when plaintiff began work than in the 1950s when she first began work at defendant-employer. Ken Blakely was the maintenance foreman at the Hanes/Sara Lee plant since September 1970 and was in charge of and familiar with equipment throughout the plant. Mr. Blakely testified to the fact that air quality had been improved in the mid 1960s and then again in the 1980s. Although Ms. Harris was not aware of any employee during her 43 years of work with defendant-employer having filed a claim for byssinosis or lung disease from exposure to cotton dust, she was only in a position to know of claims regarding people in her department. She worked with and supervised plaintiff for only approximately four years in the early to mid 1970s and therefore is not in a good position to provide testimony pertaining to claims filed which would be relevant to plaintiffs claim. Additionally, Mr. Blakely was not aware of any employee under his supervision who worked on machines in the areas where the plaintiff worked ever filing a claim alleging byssinosis or lung disease from exposure to cotton dust. Mr. Blakelys testimony regarding claims filed carries little weight with regard to plaintiffs claim as Mr. Blakelys primary contact with employees would have been within the maintenance department where plaintiff never worked. Furthermore, Mr. Blakely was never plaintiffs supervisor. Neither Ms. Harris nor Mr. Blakely is an expert in the area of air quality and because of their limited contact with plaintiff, their lay testimony is of limited probative value regarding plaintiffs claim.
9. Hanes/Sarah Lees pulmonary surveillance program was instituted in the late 1970s whereby pulmonary function tests were administered and respiratory questionnaires were given to plaintiff and other employees. In the late 1980s plaintiff developed respiratory symptoms including chest tightness, shortness of breath, wheezing and a productive cough. Although plaintiff indicated in retrospect that his symptoms were most noticeable when he was at work, his symptoms varied from time to time as did the results of the tests administered to him before and after his work shift during the period from 1979 to 1991. Dr. Young, a pulmonary specialist who examined plaintiff, determined that plaintiffs spirometry scores before and after the work shift for many years past failed to show any consistent pattern of work shift decrement. Although Dr. Young felt that the spirometry score results indicated a lack of etiology, Dr. Kunstling disagreed. Dr. Kunstling is of the opinion that the spirometry scores or the lack of a consistent pattern of "Monday morning syndrome or the tendency for symptoms to worsen at work and ameliorate after work is not necessarily a factor in determining causation. The lack of documented "Monday morning syndrome is not decisive in determining the relationship between plaintiffs work environment and his chronic obstructive pulmonary disease.
10. During the twelve-year period of testing while working with Hanes/Sara Lee, plaintiffs overall lung function steadily declined. In the later years of his employment he was told on several occasions by the plant nurses, and by plant physicians Dr. Gunn and Dr. Van Cleve, that his breathing scores were dropping. Plaintiff was warned numerous times by defendant-employer that he should quit smoking.
11. Plaintiff is a long time smoker who smoked in varying amounts beginning at age 17. He smoked in amounts varying from a few cigarettes per day to half a pack to a pack per day. At the time of the hearing before Deputy Commissioner Stanback, plaintiff continued to smoke at the rate of approximately four or five cigarettes per day.
12. Spirometry testing performed at Moses Cone Hospital in December of 1994 revealed air flow measurements as low as thirty-three percent of predicted normal. Plaintiffs disease was assessed as very severe obstructive airways disease with only mild improvement with bronchodilator. At that time Dr. Clinton D. Young considered him disabled as of the date of his last employment in 1992 as a result of his chronic obstructive lung disease. However, Dr. Young was unable to conclude that plaintiffs exposure to cotton dust was the etiology for the lung condition from which plaintiff suffers. In addition, Dr. Young was of the opinion that plaintiffs cigarette smoking alone could have been the cause of plaintiffs condition. Nevertheless, Dr. Young also concluded that plaintiff has had an occupational exposure to cotton dust and that his occupational exposure would have placed him at an increased risk of contracting chronic obstructive pulmonary disease.
13. When tested again in April of 1996 at Cardinal Healthcare, the results also revealed severe chronic obstructive pulmonary disease, classified by pulmonary expert Ted R. Kunstling, M.D., as Class III impairment by AMA criteria, rendering plaintiff unable to perform activity above a sedentary level of exertion. Dr. Kunstling indicated that plaintiffs history of cigarette smoking and his 19 years of work with Arista significantly contributed to plaintiffs chronic obstructive pulmonary disease. He further indicated that plaintiffs exposure in his work environment with defendant-employer had an effect on plaintiffs lung condition. Dr. Kunstling agreed with Dr. Youngs opinion that plaintiffs pulmonary function scores were not indicative of a consistent pattern of response to work exposure. Plaintiff did not, in Dr. Kunstlings opinion, consistently have an acute reaction to cotton dust. However, this fact did not influence his opinion regarding causation of plaintiffs disease.
14. Plaintiff is currently being treated for high blood pressure. Furthermore, plaintiff became depressed in 1989 when his wife was suffering from cancer. He became overly dependent on alcohol and was hospitalized for alcohol abuse. His treatment for depression and alcoholism continued for quite some time. In fact, he was treated in-patient at Charter Hospital for depression and alcoholism from April 20, 1993 to May 31, 1993. Thereafter, he participated in a 6-month day treatment program. Plaintiffs depression and alcoholism are not causally related to his employment with Hanes/Sara Lee. Furthermore, during plaintiffs stay at Charter Hospital he was not capable of earning wages due to his depression and alcoholism.
15. Plaintiffs employment with Arista significantly contributed to the development of his chronic obstructive pulmonary disease. His history of cigarette smoking is also a significant contributing factor in the development of his chronic obstructive pulmonary disease. His exposure to cotton dust at both Arista and Hanes/Sara Lee placed him at greater risk of developing that disease than members of the general public not so exposed.
16. Plaintiffs chronic obstructive pulmonary disease was augmented, however slightly, when he was exposed to the hazards of cotton dust while in the employment of defendant-employer. Therefore, plaintiff suffered a last injurious exposure while employed with defendant-employer.
17. Defendants appealed from Deputy Commissioner Stanbacks Opinion and Award filed on December 15, 1998 in favor of plaintiff.
18. Defendants were reasonable in their defense of this claim.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiffs exposure to cotton dust while employed at Arista significantly contributed to his chronic obstructive pulmonary disease. Furthermore, his employment with Arista placed him at an increased risk as compared to the general public of contracting chronic obstructive pulmonary disease which is due to causes and conditions which are characteristic of and peculiar to his employment with Arista. Plaintiff contracted an occupational disease, chronic obstructive pulmonary disease, as a result of his employment with Arista. G.S. 97-53(13); Rutledge vs. Tultex Corp,308 N.C. 85, 301 S.E.2d 359 (1983); Hilliard vs. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982).
2. Plaintiffs exposure to cotton dust in his employment with defendant-employer augmented the occupational disease he contracted while at Arista and constitutes a last injurious exposure to the hazards of an occupational disease. G.S. 97-57.
3. As a result of his occupational disease, plaintiff is incapable of earning wages in any employment and is entitled to temporary total disability benefits, subject to an attorneys fee awarded herein, beginning August 5, 1992, after he was last employed with defendant-employer, and continuing until he returns to work at the same or greater wages or further order of the Commission. However, plaintiff is not entitled to disability benefits from April 20, 1993 to May 31, 1993 during his hospitalization for depression and alcoholism which is unrelated to his occupational disease. G.S.97-29 and 97-2.
4. Plaintiff is entitled to medical treatment related to his chronic obstructive pulmonary disease to the extent it tends to effect a cure, provide relief or lessen the period of plaintiffs disability. G.S. 97-25.
5. Plaintiff is entitled to attorneys fees in the amount of $1,000.00 for defendants unsuccessful appeal from Deputy Commissioner Stanbacks Opinion and Award. However, as defendants defense of this case was reasonable in light of Dr. Youngs opinion, plaintiff is not entitled to attorneys fees for stubborn and unfounded litigiousness on the part of the defendants. G.S.97-88 and G.S. 97-88.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission adopts the holding of the Deputy Commissioner and enters the following
 AWARD
1. Defendants shall pay temporary total disability benefits, subject to an attorneys fee awarded herein, to plaintiff at the rate of $192.00 per week from August 5, 1992 and continuing, with the exception of April 20, 1993 to May 31, 1993, until he returns to work at the same or greater wages or further order of the Commission. All sums which have accrued shall be paid in a lump sum subject to an attorneys fee awarded herein.
2. Defendants shall pay all medical expenses reasonably required to effect a cure, provide relief, or lessen the period of plaintiffs disability resulting from plaintiffs chronic obstructive pulmonary disease upon the submission of bills in accordance with Commission procedure.
3. An attorney fee in the amount of twenty-five (25%) of all compensation due plaintiff is approved and shall be paid by defendants directly to plaintiffs counsel.
4. Defendants shall pay plaintiffs attorney $1,000.00 in attorneys fees for defendants unsuccessful appeal.
 ORDER
1. Plaintiffs motion for attorneys fees pursuant to G.S. 97-88.1 is Hereby, and the same shall be, Denied.
2. Defendants shall pay the costs due the Commission.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
DCS:nwg